MOUGEY, JR., *v.* BECKER.

(Decided February 11, 1935.)

*Messrs. Nichols, Morrill, Wood, Marx & Ginter,* for plaintiff in error.

*Messrs. Kunkel & Kunkel,* for defendant in error.

MATTHEWS, J. The defendant in error, Robert Becker, recovered a judgment in the Court of Common Pleas of Hamilton county for damages on account of personal injuries received in a collision between his person and an automobile driven by Gordon Mougey,

Jr., the plaintiff in error. The parties will be referred to hereafter by the positions occupied by them in the trial court, which were the reverse of those now held in this court.

The collision took place in the city of Cincinnati, on Reading road, at a point from thirty-five to fifty feet north of Morgan street, which connects with the east side of Reading road. On the west side of Reading road, connecting with it, is Kinsey avenue, but the evidence seems to indicate that if the side lines of the two streets were extended so as to join they would not be straight lines. This state of the evidence raised the question whether the place on Reading road where these two streets connect with it should be regarded as a street intersection, but the view which we have taken of the record makes it unnecessary to consider the point.

The defendant pleaded by way of defense that the plaintiff's own negligence contributed to the collision and his damage, in that he was in the act of violating the municipal ordinance providing that "Pedestrians shall not cross streets or highways except at designated crossings and then at right angles only."

The plaintiff by reply placed this defense in issue.

The only evidence on this subject is found in the testimony of the plaintiff. He testified as follows:

"Q. You say when you left the sidewalk on the east side of Reading road you left it at a position approximately 35 feet north of the north line of Morgan street? A. Yes.

"Q. You did not come down to the corner of Morgan street to make the crossing there? A. No, I did not, it would be very foolish to do that.

"Q. Why? A. Because if I had made the crossing on a regulation I would have to cut a diagonal cross across the street.

"Q. The street turns there? A. Yes,

"Q. You could have walked in a straight line from this corner, that is, the northeast corner, to the north corner of Kinsey street? A. No, I would not have made a complete crossing, I would have landed in Kinsey avenue.

"Q. Is Kinsey street about the same width as Morgan? A. I would judge pretty close. I think, if anything, Morgan street is a little wider, anywhere around about three to five feet.

"Q. Now, you say, that this corner, the north corner of Kinsey street and Reading road are at a point opposite a point 35 feet of the north line of Morgan street? A. Yes, that is what I mean to imply, that is, —will you read that question?

"Q. The north corner of Kinsey street and Reading road are opposite the point where you crossed the street? A. No. I mean a point opposite where I crossed it was 35 feet; on a straight line would bring me in the neighborhood of 12 or 15 feet north of the curb line of Kinsey avenue. In other words, 15 feet from the corner.

"Q. So if you crossed Reading road at right angles you would still have been 15 feet beyond the street? A. Beyond the curb line.

"Q. In other words, that was not the crossing from Morgan street and Kinsey where you crossed? A. It positively was the regular crossing that everybody used.

"Q. Everybody started across this street 35 feet—

"A. (Interrupting) I would not say exactly 35 feet, but in the neighborhood, and that practically was the point."

The trial court was of the opinion that this evidence, if believed, did not present a situation applicable to the provisions of the ordinance, and, therefore, refused to admit it in evidence, and refused a special

charge based upon the ordinance. It is this action that is most strongly urged as error.

In *Martin, Jr.*, v. *Heintz*, 126 Ohio St., 227, 184 N. E., 852, the court held, as stated in the first paragraph of the syllabus:

"There is no presumption of negligence, except such as arises from facts proven. There is a presumption of freedom from negligence, and such presumption stands until rebutted by evidence."

This presumption of due care could, of course, be overcome by evidence, and if plaintiff's own testimony had shown that he was violating an ordinance enacted in the interest of public safety, it would, undoubtedly, have had that effect.

Crossing a street at other than a designated crossing was the prohibited act. Doing that would constitute the violation of the ordinance, and that was the negligent act charged against the plaintiff. In *Hoffman* v. *Goldberg*, 35 O. L. R., 275, the plaintiff recovered a judgment for damages caused by a collision between his person and an automobile driven by defendant. In that case, as in this, the defendant pleaded that plaintiff was in the act of crossing the street at a place other than at a designated crossing. The plaintiff was crossing the street and there was no evidence that it was at a designated crossing. At page 277, the court said:

"The plaintiff alleged that he crossed at a designated crossing, the defendant alleged he did not. In this connection the burden was upon the defendant to prove by a preponderance of the evidence that the place where Hoffman crossed was not a designated crossing, in order to make applicable the city ordinances forbidding crossing elsewhere by pedestrians. There having been a failure of such proof, the ordinances were erroneously admitted."

To the same effect is *Loveless* v. *Kirk,* 34 O. L. R., 175, at page 177.

Adverting to the plaintiff's testimony, already quoted, can it be said that an inference arises from it that he was violating the ordinance at the time? We think not. He sums up his testimony as to where he was by the statement that it "positively was the regular crossing that everybody used." Now, regardless of the probative value of this testimony to prove that the place was a regularly designated crossing, it seems clear that it has no tendency to prove that it was not a regularly designated crossing.

Inasmuch, therefore, as the evidence did not present a case for the application of the ordinance, we find the court did not err in refusing to admit it in evidence and in refusing to charge upon it.

The other errors assigned relate to the general charge. We find these assignments relate to omissions to charge. The issues were correctly stated, and the fact that the court might have charged more fully upon certain subjects did not make that which was said an erroneous statement of the law. No request was made for an additional instruction. Only a general exception was reserved.

Finding no error in the record, the judgment is affirmed.

*Judgment affirmed.*

HAMILTON, P. J., and Ross, J., concur.

ON APPLICATION to certify.

(Decided March 11, 1935.)

*Messrs. Nichols, Morrill, Wood, Marx & Ginter* and *Mr. Milton H. Schmidt,* for the application.
*Messrs. Kunkel & Kunkel, contra.*

It is the conclusion of the court that even if the charge in the instant case is similar to that considered in *Souder* v. *Hassenfeldt, Admx.*, 48 Ohio App., 377, 194 N. E., 47,—which is at least questionable—the opinion of this court is in direct accord with the law pronounced in *Skinner* v. *Pennsylvania Rd. Co.*, 127 Ohio St., 69, 186 N. E., 722.

A certification under such circumstances, we consider not required by either the spirit or the letter of the law.

The application to certify is denied.

*Application denied.*

Ross, P. J., MATTHEWS and HAMILTON, JJ., concur.